```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
KARINA WALTON,

                        Plaintiff,                                  OPINION AND ORDER

        - against -                                                 13-cv-7907 (ER)

GEORGE M. HADLEY,

                        Defendant.
---------------------------------------------------------------x
```

Ramos, D.J.:

This diversity action arises from a dispute over the ownership of a valuable piece of fine artwork by the renowned French sculptor Auguste Rodin. Doc. 1 ("Compl."). The specific work at issue, a sculpture entitled *Le Baiser* (*The Kiss*), is one of a limited number of nearly identical bronze casts authorized and signed by the artist. Docs. 1, 3.[1] Plaintiff Karina Walton ("Plaintiff") alleges that she acquired the work upon her father's death in 2001. Compl. ¶ 33. Shortly before it was to be sold through Christie's auction house, however, Defendant George M. Hadley ("Defendant") intervened on the grounds that he believed the work to be one that he had loaned to a friend and that had subsequently been removed from the friend's home. *See* Compl. ¶¶ 1, 40, 45; Countercl. ¶¶ 14, 17, 19. The work was sold at auction for $800,000, and Christie's is currently holding the proceeds in trust pursuant to an agreement between the parties and Christie's, pending a determination as to who owned the sculpture and thus is entitled to the proceeds. Countercl. ¶ 22.

---

[1] Document 3 contains both Defendant's Answer (beginning on page 1) and his three-count Counterclaim (beginning on page four). Citations to "Answer" and "Countercl." refer to the enumerated paragraphs contained within the respective portions of the document.

Plaintiff then filed suit on November 6, 2013, alleging tortious interference with contract and seeking a declaration that she has a right to the auction proceeds. Compl. ¶¶ 48-58. Defendant answered and interposed a counterclaim on November 21, 2013. Doc. 3. The Counterclaim seeks an order quieting title, a declaratory judgment in Defendant's favor, and an injunction requiring that the sales proceeds be released to him. Countercl. ¶¶ 24-30.

Presently before the Court is Plaintiff's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Doc. 12. Plaintiff seeks judgment in her favor on her declaratory judgment claim, as well as dismissal of Defendant's counterclaim.[2] *Id.*

For the reasons discussed below, Plaintiff's motion for judgment on the pleadings is GRANTED in part and DENIED in part. Specifically, Defendant's counterclaim is dismissed for failure to state a claim, but Plaintiff is not entitled to an affirmative judgment in her favor based solely on the contents of the pleadings.

**I.   Background**

Plaintiff, a New Jersey resident,[3] alleges that the cast of *Le Baiser* was in her father's possession for "all of her conscious life" and that she acquired it after his death in 2001. Compl. ¶¶ 3, 31, 33. In 2013, upon learning that it might be valuable, she contacted Christie's and ultimately entered into a contract with the auction house to sell the work at a public auction. *Id.* ¶¶ 37-40.

Defendant alleges that he saw the sculpture, which matches the description of the one he owns, listed in the Christie's auction catalogue. Countercl. ¶¶ 4-5. According to Defendant, his

---

[2] The motion is not addressed to Plaintiff's tortious interference claim.

[3] The counterclaim specifies that Plaintiff's residence is located in West Deptford, New Jersey. Countercl. ¶ 2. Plaintiff admits this allegation in her answer to the counterclaim. Pl.'s Answer (Doc. 6), ¶ 2. The Court notes that West Deptford is located outside Philadelphia, on the opposite side of the Delaware River.

sculpture is one of two Rodins that had originally been displayed at his grandfather's Richmond Hill estate in New York, the other being a similarly sized work entitled *L'Éternel Printemps* (*Eternal Springtime*).  *Id.* ¶¶ 7-8.  The two sculptures remained in the family following his grandfather's death—though his mother loaned them to Vassar College for a time—and ultimately passed to Hadley on his mother's death in 1985.  *Id.* ¶¶ 9-13.  Defendant retained possession of the sculptures in Philadelphia until 1994, when he loaned both to an individual in Boston and subsequently loaned *Le Baiser* to Elaine Moranz in Philadelphia.  *Id.* ¶ 14.

Defendant, who now resides in Boston, Massachusetts, attempted to contact Moranz upon seeing the Christie's catalogue but was informed that she had died two years earlier.  *Id.* ¶¶ 1, 16.  Joel Moranz, Elaine's husband, told Defendant that a woman named Jana Paley had removed the sculpture from his home and that it, along with the rest of the contents of Paley's moving van or storage facility, had been stolen.  *Id.* ¶ 17.[4]  Defendant was unable to contact Paley,[5] locate a police report, or obtain any other explanation as to the location of his cast, and Christie's was unable to provide him with any additional information regarding the provenance of the sculpture listed in the catalogue.  *Id.* ¶¶ 18-20.[6]

---

[4] In answering the Complaint, Defendant admits that he initially indicated that Joel Moranz told him that *Le Baiser* was removed from his home in 2011 but that he subsequently represented that Moranz said the sculpture was removed two years later, in 2013.  Compl. ¶¶ 13-14; Answer ¶¶ 13-14.  The pleadings do not identify the circumstances under which these representations were made.

[5] Defendant admits that he and Paley are acquainted.  Compl. ¶ 15; Answer ¶ 15.

[6] The catalogue lists the provenance as follows:

> Private collection, United States (by 1930).
> Private collection, New Jersey.
> By descent from the above to the present owner, 2001.

Countercl. Ex. A.

Plaintiff alleges—and Defendant admits—that the sculpture she consigned to Christie's is one of at least 65[7] unnumbered casts of *Le Baiser* and that it does not have any known distinguishing characteristics setting it apart from the others. Compl. ¶¶ 26-27, 29; Answer ¶¶ 26-27, 29. Defendant likewise admits that his missing sculpture is unnumbered and lacks any known characteristics that would distinguish it from the other *Le Baiser* casts. Compl. ¶¶ 28, 30; Answer ¶¶ 28, 30.

## II.     Legal Standard

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court applies the same standard of review to a Rule 12(c) motion as it does to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief

---

[7] In her motion papers, Plaintiff asks the Court to take judicial notice of the Rodin catalogue raisonné for the proposition that there are actually 103 identical casts of *Le Baiser*. Pl.'s Mem. of Law in Supp. at 3-4 & nn.2-3; Pl.'s Reply Mem. of Law in Supp. at 2 n.2. Defendant objects to the Court taking judicial notice in this instance, also arguing that the relevance of the total number of casts is reduced by virtue of the fact that "most" are housed in museums and thus are not available for public sale. Def.'s Mem. in Opp'n at 5-6. Because the difference between 65 and 103 casts will not affect the Court's ruling on the instant motion, the Court declines to reach these issues at the present time.

4

that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

The legal standard on a Rule 12 motion is the same when evaluating whether counterclaims have been sufficiently pled: the factual allegations in the counterclaim are accepted as true, all reasonable inferences are drawn in the counterclaimant's favor, and the counterclaim must state a facially plausible claim to relief. *See, e.g.*, *Weisman Celler Spett & Modlin, P.C. v. Trans-Lux Corp.*, No. 12 CIV. 5141 JMF, 2014 WL 476348, at *2 (S.D.N.Y. Feb. 6, 2014); *Ross Stores, Inc. v. Lincks*, No. 13 CIV. 1876 SAS, 2013 WL 5629646, at *2 (S.D.N.Y. Oct. 4, 2013); *Overseas Private Inv. Corp. v. Furman*, No. 10 CIV. 7096 RJS, 2012 WL 967458, at *7 (S.D.N.Y. Mar. 14, 2012) (discussing the applicability of *Twombly* to counterclaims challenged under Rule 12(c)); *Kingvision Pay-Per-View, Ltd. v. Falu*, No. 06 CIV. 4457, 2008 WL 318352, at *1 (S.D.N.Y. Feb. 4, 2008).

### III. Discussion

#### A. The Court Disregards Matters Extrinsic to the Pleadings

As a preliminary matter, the Court notes that the parties devote a significant portion of their briefing to matters outside the pleadings, and they have submitted to the Court an array of

5

extrinsic documents that are not properly before the Court on a Rule 12(c) motion. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009))); *Century Sur. Co. v. Marzec*, No. 12 CIV. 5540 JPO, 2013 WL 3919383, at *2 (S.D.N.Y. July 30, 2013) (nothing that, in ruling on a Rule 12(c) motion, "a Court may review only the pleadings, any documents that are attached thereto, incorporated by reference, or those 'integral' to the allegations, together with any facts of which a Court may take judicial notice"); *McCoy Assocs., Inc. v. Nulux, Inc.*, 218 F. Supp. 2d 286, 290 (E.D.N.Y. 2002) ("As suggested by the name of such a motion, a court analyzing a motion under Rule 12(c) may look only at the 'pleadings,' *i.e.*, the complaint, the answer, the counterclaims and replies thereto, the third-party complaint, and the answer to the third-party complaint.").

The extrinsic materials at issue here include, *inter alia*, statements made in the parties' pre-motion letters and at the pre-motion conference, Defendant's Rule 26 initial disclosures, emails exchanged between counsel, an affidavit that Plaintiff provided to Defendant prior to filing the Complaint, and a draft complaint that Defendant purportedly considered filing at one point but ultimately did not. Such matters will be excluded from consideration.[8]

---

[8] The Court notes that, in most instances, the parties' citations to extrinsic materials are unaccompanied by any legal arguments as to the propriety of those materials' consideration.

Likewise, the entire debate in the parties' briefs over the significance of the "chaser's mark"[9] said to be present on Defendant's cast is irrelevant at this stage, as nothing in Defendant's pleadings—including the description of his cast provided in the counterclaim—references this feature.  *See* Pl.'s Mem. of Law in Supp. at 14-15; Def.'s Mem. in Opp'n at 5, 8; Pl.'s Reply Mem. of Law in Supp. at 7-8.  Indeed, as noted above, Defendant affirmatively admitted that his sculpture lacks any distinguishing characteristics.[10]  Defendant cannot supplement his pleadings via facts alleged in his brief or arguments made during pre-motion proceedings.  *See Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) (summary order) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint.").

Thus, in evaluating the merits of Plaintiff's motion, the Court considers only the pleadings themselves, any documents that are attached thereto or that are otherwise properly before the Court, and the parties' arguments to the extent that they are based on those materials.

### B.  Defendants' Counterclaim Fails To State a Plausible Claim[11]

The counterclaim in this case fails to establish a plausible claim that Defendant is the owner of this particular *Le Baiser* cast.  Defendant merely alleges that he possessed a *Le Baiser*

---

[9] As used in this context, the word "chase" means "to ornament (a metal, esp. silver, surface) by indenting with a hammer and tools without a cutting edge."  WEBSTER'S THIRD NEW INT'L DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 379 (2002).

[10] The counterclaim's silence regarding the purported chaser's mark is particularly striking given that Defendant's description of his cast otherwise parrots the description of Plaintiff's cast that appeared in the Christie's catalogue.  *Compare* Countercl. ¶ 4, *with id.* Ex. A.  The description of the cast found in the appraised inventory of Defendant's mother's estate likewise omits any reference to a chaser's mark.  *See id.* Ex. D.  There is thus no basis in the pleadings for the Court to consider arguments based on this feature.

[11] Given that most of the briefing focuses on the viability of Defendant's counterclaim, the Court begins by discussing that claim before turning to Plaintiff's affirmative case.

cast at one time, that he loaned it out, that he received second-hand information indicating that it was stolen from the person last known to have possessed it, and that he was unable to obtain additional information regarding the provenance of Plaintiff's cast.[12]  Even assuming the truth of all of these allegations, as the Court is required to do in this instance, none of this permits the Court to draw a non-speculative inference that Plaintiff's cast and Defendant's cast are one and the same.[13]  Defendant has not offered any allegations linking Plaintiff to his cast or to any of the persons who allegedly possessed the cast prior to its disappearance; instead, Defendant admits that *he* is acquainted with the person last believed to have possessed his cast and that he has been unable to contact her or otherwise obtain information regarding the sculpture's whereabouts subsequent to its disappearance.  In short, Defendant's allegations establish solely that his cast is missing; they are silent as to what role, if any, Plaintiff is alleged to have played in these events.

---

[12] In his brief, Defendant argues that the sculpture "reappeared with temporality, territoriality, with a unique [K] chaser's mark, and with a Walton story that doesn't add up."  Def.'s Mem. in Opp'n at 2; *see also id.* at 8 ("In this case, [Defendant]'s cast went missing in Philadelphia in 2013 and shortly thereafter in 2013, an identical cast reappeared in the same location.").  As noted, the chaser's mark argument is not derived from the pleadings and therefore will not be considered.  "Temporality" and "territoriality" are loosely pled at best.  Apart from identifying Plaintiff's city of residence, Defendant alleges only that someone else (Jana Paley) removed the sculpture from the Moranz home in Philadelphia (and he acknowledges that he has made conflicting claims regarding the year in which this occurred) and that it was subsequently stolen either from a moving van or from a storage facility.  The implication appears to be that, because Plaintiff lives near Philadelphia, she must either have been involved in the theft in some unspecified capacity or, at the very least, have come into possession of the cast after it was stolen and then fabricated the story about acquiring it from her father's estate.  With only vague allegations to support them, the inferences for which Defendant advocates are purely conjectural and cannot save his otherwise deficient counterclaim.

[13] Defendant misconstrues a portion of Plaintiff's brief wherein Plaintiff notes that, while Defendant's theory is "possible," it is "equally possible" that Defendant's cast is actually one of the other versions of *Le Baiser* that Christie's has sold at auction.  *See* Def.'s Mem. in Opp'n at 2 (quoting Pl.'s Mem. of Law in Supp. at 15).  Defendant seems to view this argument as some sort of concession by Plaintiff as to the viability of Defendant's claim; however, Plaintiff is actually making the precise opposite point—namely, that mere possibility is not enough to state a plausible claim under *Twombly*.  *See* Pl.'s Mem. of Law in Supp. at 15 ("[Defendant's] speculations do not come close to the pleading standard required in the federal courts—that it is plausible, and not merely conceivable, that [Defendant] has a claim for relief against [Plaintiff]."); *see also* Pl.'s Reply Mem. of Law in Supp. at 8-9 ("That so many equally possible scenarios exist demonstrates that it is not at all *plausible* that [Plaintiff's] Cast actually belongs to [Defendant]." (emphasis in original)).

Some sort of link between Plaintiff and the purportedly stolen sculpture is essential given that, as noted, Defendant concedes that his cast did not bear any distinguishing characteristics relative to the other *Le Baiser* casts, thus foreclosing the possibility that he can establish ownership based solely on the appearance of the sculpture itself. As currently pled, the counterclaim essentially asks the Court to infer that, simply because he can trace his cast's provenance back further than Plaintiff can trace hers, she must have either stolen his or obtained it with knowledge that it had been stolen.[14] Defendant does not expressly allege either of these theories, nor does he offer any factual allegations that would tend to substantiate the requisite inference.[15]

Defendant's manner of pleading would effectively allow him to assert an ownership claim against anyone who possessed a *Le Baiser* cast but was unable to provide a detailed account of its provenance. Given the distinction drawn in *Twombly* between claims that are plausible and those that are merely conceivable, the Court cannot permit the counterclaim to go

---

[14] A third inference—that Plaintiff unknowingly purchased a stolen piece of fine art—would be unreasonable given how Plaintiff describes the work's provenance. Had Plaintiff purchased it in good faith, there would have been no apparent reason for her to provide Christie's with a different version of events.

[15] In a supplement to his opposition papers, Defendant relies on Plaintiff's father's obituary and the New Jersey inheritance laws (along with information from an affidavit that Defendant did not incorporate into his counterclaim) to proffer an argument that Plaintiff could not lawfully have obtained full ownership of the sculpture from her father's estate. *See* Doc. 21. Even if true, this argument is beside the point; whether or not Plaintiff's family improperly distributed her father's assets in no way bears on whether the sculpture at issue actually belongs to Defendant. To the extent that the argument is intended as an attack on the credibility of Plaintiff's story more generally, the Court notes that Defendant's theory is premised on a number of assumed facts that are not actually pled in the counterclaim. Principal among these is an assumption that Plaintiff's father died without a will and thus that the state intestacy laws governed any distributions from his estate. *See also* Def.'s Mem. in Opp'n at 4 ("There is no probate cited and none can be found."). As already noted, Defendant is precluded from supplementing his pleadings with facts recited in his motion papers. While the Court is to draw all *reasonable* inferences in Defendant's favor at this stage in the proceedings, the Court declines to engage in speculation regarding Plaintiff's familial relations and the manner in which her father's estate was administered.

forward based solely on this type of loose speculation.[16]  Accordingly, Defendant's counterclaim will be dismissed.[17]

### C. Plaintiff Is Not Entitled to a Declaratory Judgment Pursuant to Rule 12(c)

Plaintiff appears to be of the view that, because Defendant's counterclaim is deficient under *Twombly*, she is necessarily entitled to an affirmative declaratory judgment as a matter of law.  *See* Pl.'s Mem. of Law in Supp. at 1 n.1 (describing dismissal of the counterclaim as "simply the other side of the same coin").  That position is incorrect.  Here, the Court has determined solely that the counterclaim—as currently pled—fails to allege sufficient factual content as to render Defendant's claim of ownership plausible.  This determination is not equivalent to a finding that Defendant's claim is conclusively *foreclosed* as a matter of law.  In

---

[16] As an independent basis for denying Plaintiff's motion, Defendant points to the contract the parties entered into with Christie's to allow the sale to go forward.  *See* Def.'s Mem. in Opp'n at 4-5, 8 ("Dismissal of this claim would not satisfy the requirements of the contract and would leave the issue of ownership of the sculpture and the proceeds of the sale still in dispute, unresolved.  The Court should allow discovery on the case to proceed and the parties to have the benefit of their bargain.").  That contract provides that Christie's will retain the sales proceeds until "the competing claims to title in the Property have been investigated and determined (whether by written agreement between the parties or final order of a court of competent jurisdiction)."  Decl. of John E. Sutherland (Doc. 16) Ex. O, at 2.  Assuming, *arguendo*, that the contract is properly before the Court on a Rule 12 motion, Defendant's argument is without merit.  The Court does not read a lone, general reference to "investigation" to undermine its own jurisdiction over the title dispute, which is otherwise properly before the Court under 28 U.S.C. § 1332.  In any event, Defendant has not cited any authority—nor is the Court aware of any—that would allow the parties to contract around *Twombly* and *Iqbal*, thereby entitling Defendant to discovery on a counterclaim that has not been properly alleged.

[17] The Court is sensitive to the fact that, in cases involving stolen artwork, it may be difficult for the true owner to come forward with much by way of factual support for his ownership claims.  That said, *Twombly* and *Iqbal* make clear that a plaintiff or counterclaimant must satisfy the plausibility standard *before* being permitted to take discovery.  Thus, Defendant's argument that his conclusory assertion of ownership is enough to move the case beyond the pleading stage is unavailing.  *See* Def.'s Mem. in Opp'n at 1-2 ("The denial of [Plaintiff's] assertion of ownership and [Defendant's] claim of ownership alone should be sufficient to defeat [Plaintiff's] motion.").  Defendant's discussion of *Solomon R. Guggenheim Foundation v. Lubell*, 569 N.E.2d 426 (N.Y. 1991), and two subsequent cases applying it does not compel a different outcome.  *See* Def.'s Mem. in Opp'n at 8.  *Lubell* was concerned with whether, for statute of limitations purposes, New York law imposes a reasonable diligence requirement on owners seeking to reclaim stolen art.  *See* 569 N.E.2d at 430-31.  This line of cases says nothing about a party's obligation to satisfy the federal pleading standard and thus is wholly inapposite for present purposes.

other words, the fact that Defendant has failed to adequately allege the plausibility of his ownership at the pleading stage does not automatically compel the conclusion that Plaintiff is, in fact, the true owner of *Le Baiser*.

To hold otherwise would be to allow one party to a title dispute to bring a declaratory judgment action before the matter has been fully investigated and then obtain a favorable declaration of ownership based solely on the counterparty's inability to adequately state an affirmative claim in *its* favor. Granted, as the party contesting ownership, Defendant will bear the burden of proof at trial, just as he would have had he brought suit against Plaintiff in the ordinary course. *See Schoeps v. Museum of Modern Art*, 594 F. Supp. 2d 461, 463-64 (S.D.N.Y. 2009) ("In an action for declaratory judgment, the burden of proof rests on the party who would bear it if the action were brought in due course as a claim for non-declaratory relief." (citing *Preferred Acc. Ins. Co. of N.Y. v. Grasso*, 186 F.2d 987, 991 (2d Cir. 1951))); *see also Shiotani v. Walters*, 555 F. App'x 90, 91 (2d Cir. 2014) (summary order) (noting that New York law places the burden of establishing a superior ownership right on the party seeking to recover the subject property, regardless of whether the claim sounds in conversion or replevin).[18] Plaintiff cannot, however, elect to bring a declaratory judgment action and then deprive Defendant of the opportunity to try to meet his burden at the appropriate time.[19]

---

[18] Given both the current stage of the proceedings and the positioning of the ultimate burden of proof in this case, Defendant's attempt to fault Plaintiff for failing to come forward with affirmative, admissible evidence in support of her claim is misplaced. *See* Def.'s Mem. in Opp'n at 1. Nevertheless, Plaintiff's motion for a declaratory judgment based solely on the pleadings fails for other reasons.

[19] The Court notes that Defendant could have proceeded without asserting a counterclaim at all, opting simply to defend against Plaintiff's declaratory judgment action without seeking any affirmative relief. Alternatively, Defendant might have chosen to bring a claim in state court, thereby escaping Rule 8's strictures altogether. The Court's ruling in this regard is simply that, if Defendant does wish to assert a counterclaim in federal court, he must do so in accordance with the principles articulated in *Twombly* and *Iqbal*, but his failure to do so does not, in and of itself, resolve the *merits* of the case such that Plaintiff is automatically entitled to judgment in her favor.

The only question, then, in determining whether Plaintiff is entitled to a declaratory judgment at this stage in the proceedings, is whether Defendant's admissions as to the near identity of the various casts of *Le Baiser* and his cast's lack of distinguishing characteristics resolve the dispute as a matter of law. They do not. While the presence of multiple indistinguishable casts will presumably make it more difficult for Defendant to meet his burden at trial, it does not necessarily render that task insurmountable. As detailed above, there are other factors—apart from the appearance of the sculpture itself—that might tend to support Defendant's position.[20] While he has failed to allege any such facts to this point, thus rendering his counterclaim insufficiently pled, Defendant is still entitled to defend against Plaintiff's affirmative case. Whether that defense ultimately proves to be meritorious is a question either for summary judgment or for trial; it cannot be determined based solely on the allegations currently before the Court. *See VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 339 (S.D.N.Y. 2008) ("Judgment on the pleadings 'is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by

---

[20] In support of her argument that the identity of the various casts is dispositive, Plaintiff points to the New York Appellate Division's decision in *Komolov v. Segal*, 957 N.Y.S.2d 99 (N.Y. App. Div. 2012). *See* Pl.'s Mem. of Law in Supp. at 14. There, the state court dismissed a conversion action on the grounds that, *inter alia*, the "plaintiffs failed to show 'legal ownership or an immediate superior right of possession to a specific identifiable thing.'" 957 N.Y.S.2d at 101 (quoting *Messiah's Covenant Cmty. Church v. Weinbaum*, 905 N.Y.S.2d 209, 212 (N.Y. App. Div. 2010)). Specifically, the plaintiffs alleged conversion of a sapphire ring but provided no details about it, and the only picture provided was of a loose sapphire. *See id.* Putting aside the fact that dismissal in *Komolov* was governed by state, as opposed to federal, pleading standards, the Court does not share Plaintiff's interpretation of the "identity requirement." Pl.'s Mem. in Supp. at 14. The problem in *Komolov* was that the pleadings failed to adequately identify the specific property that the defendants allegedly converted; here, by contrast, there is no question as to the identity of the particular chattel at issue—the *Le Baiser* cast that Plaintiff consigned to Christie's. *Komolov* does not stand for the proposition that a party is precluded from alleging ownership rights in a particular piece of personal property merely because other, identical items happen to exist elsewhere in the world. Indeed, such a holding would effectively give parties free reign to convert non-unique pieces of property with impunity. Here, it suffices that Defendant is contesting ownership of a specific *Le Baiser* cast. He will still need to prove that he is the rightful owner of that particular cast (*i.e.*, the mere fact that he once owned *a* cast will not suffice), but that is an evidentiary issue to be dealt with at a later stage in the proceedings.

12

considering the contents of the pleadings.'" (quoting *Sellers v. M.C. Floor Crafters Inc.*, 842 F.2d 639, 642 (2d Cir. 1988))), *aff'd*, 355 F. App'x 507 (2d Cir. 2009).[21]

Thus, it would be premature for the Court to grant Plaintiff's request for a declaratory judgment at this time. To the extent Plaintiff's motion seeks such affirmative relief, the motion is denied.

## IV. Conclusion

For the reasons set forth above, Plaintiff's motion for judgment on the pleadings is GRANTED in part and DENIED in part. Defendant's counterclaim is dismissed without prejudice.[22] If Defendant wishes to amend the counterclaim, he shall do so by **July 31, 2014**.

The parties shall appear for an initial case management and scheduling conference on **August 15, 2014** at **9:30 a.m.** The parties are directed to confer in advance of that conference

---

[21] The cases Plaintiff cites are inapposite. *See* Pl.'s Mem. of Law in Supp. at 12-13. *Diatraco Corp. v. Freeman*, 568 F. Supp. 778 (S.D.N.Y. 1982), was a summary judgment case in which the Court concluded that the claimant could not satisfy its burden of proof "on the present record, which includes *all of the evidence which could be offered at trial*." *Id.* at 781 (emphasis added). Here, Plaintiff is seeking affirmative relief *without* the benefit of an evidentiary record. The Arizona, Texas and Washington state appellate cases cited (1) are non-New York cases and thus are uninformative as to the applicable decisional law, and (2) all involved, as Plaintiff herself acknowledges, determinations as to the sufficiency of the *evidence* supporting the respective claims. *See Performance Sys., Inc. v. Kahl*, 536 P.2d 213 (Ariz. Ct. App. 1975); *Satterfield v. Knippel*, 169 S.W.2d 795 (Tex. Civ. App. 1943); *Bloedel Timberlands Dev., Inc. v. Timber Indus., Inc.*, 626 P.2d 30 (Wash. Ct. App. 1981); *see also* Pl.'s Mem. of Law in Supp. at 12-13 (describing the deficient evidentiary showings in those cases).

[22] Defendant has expressly requested leave to cure any defects in his counterclaim. Def.'s Mem. in Opp'n at 9. Plaintiff objects on the grounds that an amendment would be futile given that Defendant "has not provided the Court with any additional facts that would save his claim." Pl.'s Reply Mem. of Law in Supp. at 10. However, Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend should be freely granted, and "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also Gelicity UK Ltd. v. Jell-E-Bath, Inc.*, No. 10 CIV. 5677 ILG RLM, 2013 WL 3315398, at *6 (E.D.N.Y. July 1, 2013) (granting leave to amend following dismissal under Rule 12(c)). Particularly given that Defendant has not previously filed or sought leave to file any amended pleadings, the Court deems it prudent to afford him an opportunity to do so at this juncture.

and to bring with them a proposed Civil Case Discovery Plan and Scheduling Order, a form of which is available on the undersigned's Court website.

The Clerk of the Court is respectfully directed to terminate the motion (Doc. 12).

It is SO ORDERED.

Dated:   July 10, 2014
         New York, New York

                                                                _____
                                                                Edgardo Ramos, U.S.D.J.